### John C. JOHNSON
#### v.
**UNITED STATES FIDELITY & GUARANTY COMPANY, Eastman Kodak Company and Holston Defense Corporation.**

Civ. A. No. 909.

United States District Court

E. D. Tennessee, Northeastern Division.

Nov. 18, 1954.

Harry L. Garrett, Kingsport, Tenn., for plaintiff.

Wilson & Worley, Kingsport, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This is a suit under the Workmen's Compensation Law of Tennessee, Code § 6851 et seq. The case was heard upon the regular call of the docket during the September term of Court in Greeneville. At the conclusion of the trial, the Court rendered an opinion from the bench resolving all questions adverse to the contentions of the defendants except the question relating to the statute of limitations. That question was taken under advisement with the understanding that counsel would file briefs in support of their respective contentions within the stated time.

Exhaustive briefs have been filed and the record is before the Court for final decision on the question as to whether plaintiff's suit is barred by the one-year statute of limitations.

Plaintiff claims to have been injured by accident on December 8, 1952. He so testified and the Court found as a fact that he was injured on that date and that his injury resulted from an accident arising out of and in the course of his employment.

On the day of his injury he was examined by Dr. McConnell, Assistant Director of the clinic of the defendant, Holston Defense Corporation, located in Kingsport. Dr. McConnell was of the opinion that plaintiff was suffering with an injured vertebra and recommended that he go to Dr. Shobe, a bone specialist in Kingsport, for treatment. Dr. McConnell and Mr. Huff, the latter a male nurse to whom plaintiff reported on the day of his injury, each stated that he did not advise them that his injury originated from an accident that occurred while working for the Holston Defense Corporation. The records of the defendant, Holston Defense Corporation, support the testimony of these witnesses on this point.

Following the advice and recommendation of Dr. McConnell, plaintiff reported to Dr. Shobe, also, on the day of his accident and was examined by the latter. Dr. Shobe's case history and report of this examination stated in substance that plaintiff had suffered with back pain at intervals for a number of years. That report contains the following: "There is no history of specific injury. * * * Until recently, he was able to get along with occasional episodes of back pain but the past few days he developed pain in the right leg. Although, while this is not severe, it bothers him when coughing and sneezing. He has numbness along the lateral border of the foot. No GU difficulties and no history of compensation. * * * X-rays brought with him show narrowing of the L-5 interspace. He should be admitted to the hospital for traction."

Plaintiff entered the hospital in Kingsport on the day following his first examination by Dr. Shobe and remained there until December 20, 1952. He returned to his home from the hospital on December 20, 1952, having been removed from the hospital in an ambulance. He remained at home for approximately four months where he slept on boards upon the advice of his physician. During the time he was in the hospital and during the indicated four months at home he suffered severe pain. He returned to work at the end of this four months period and continued to work until around March 10, 1954, at which time his services were terminated because of dissatisfaction upon the part of his employer with his work. His complaint states and his testimony shows that he was in severe pain from the date of his injury, namely, December 8, 1952, until termination of his services on March 10, 1954. He testified that he was not physically able to work during this period but that he stayed on the job in order to receive his wages, which were around $400 per month. He instituted suit to recover workmen's compensation benefits on March 30, 1954, in the Chancery Court at Kingsport.

On December 10, 1952, he signed a statement addressed to the Prudential Insurance Company of America which is headed, "Accident and Sickness Claim." This statement contains the following question and answer: (Question) "What is the nature of disability?" (Answer) "Poss. rupt. disc."

The controlling Tennessee limitation statute is Code sec. 6884, which provides as follows:

"Limitation of time in which certain acts shall be done.—The time within which the following acts shall be performed under this chapter shall be limited to the following periods, respectively.

"(1) Limit of time of actions or proceedings.—Actions or proceedings by an injured employee to determine or recover compensation, one year after the occurrence of the injury; except as provided in section 6874 of the Code as amended."

The exception provided for in sec. 6874 is not pertinent to the present case.

The Tennessee Supreme Court has held that the time begins on the date of the injury rather than the date of the accident. Ogle v. Tennessee Eastman Corporation, 185 Tenn. 527, 529, 206 S.W.2d 909.

Plaintiff, as indicated above, according to his pleadings and testimony, was injured by accident on December 8, 1952. On that date his injury was of such nature that it was disabling. It remained disabling until the date of trial and, as indicated by the evidence, has resulted in permanent disability.

Plaintiff did not start suit until March 30, 1954, or approximately 15 months and 22 days after his injury and the commencement of his disability. This suit was commenced 20 days after his services were terminated.

The injury was of such severity that plaintiff was in traction for approximately 11 days in the hospital, starting December 9, 1952. He was in bed most of the time for a period of 4 months thereafter.

It is apparent from the foregoing findings of fact that plaintiff's action is barred by the one-year statute of limitations, unless the running of the statute was tolled. Grounds relied on as tolling the statute are that plaintiff did not know the nature of his injury until January or February, 1954, and that defendants, through their doctors, concealed from him information as to his true condition and thereby misled him into postponement of resort to litigation. The specific information allegedly concealed was that plaintiff had sustained a ruptured intervertebral disc.

It is not claimed by plaintiff that any of the doctors, or any representative of the defendant, misrepresented any fact to him with fraudulent intent. It is claimed, however, that Dr. Shobe and Dr. McConnell told him that his injury was not of a serious nature and that he would get well within a reasonable time. There is evidence in the record that approximately 75% to 80% of ruptured disc patients are rehabilitated to the extent that they are able to return to their jobs. Plaintiff knew almost as much about his back injury as the doctors who examined and treated him knew. If he did not know the technical name for his trouble, this was because he made himself a fugitive from such information.

The claim submitted to the Prudential Insurance Company of America, made and signed by him on December 10, 1952, shows that he knew, or was chargeable with knowledge, that he was suffering from a possible ruptured disc. At that time his pain was very severe. This pain, as indicated before, continued for 15 months and 22 days before plaintiff decided to file suit. He gives as a reason for failure to file suit his desire to draw his wages of $400 a month rather than compensation benefits of $100 a month. He did not attribute delay to failure of doctors to tell him within a year after his injury that he had a ruptured disc. By continuing to work, plaintiff collected approximately $3,600 more during the 12 months that he did work than he could have drawn as workmen's compensation benefits during that period. In addition, plaintiff collected $600 in sick and accident benefits from the Prudential Insurance Company, making a total gain of $4,200.

The record indicates that plaintiff would have continued with his work indefinitely, if he had been permitted to do so by his employer, rather than institute suit for workmen's compensation benefits. Had he sued for benefits promptly, he might have been discharged with equal promptness. A risk was also involved in his continuing to work and foregoing suit. The result is that he gambled and lost.

Plaintiff relies on the case of Ogle v. Tennessee Eastman Corporation, 185 Tenn. 527, 206 S.W.2d 909; Burchman v. Carbide & Carbon Chemicals Corp., 188 Tenn. 592, 221 S.W.2d 888, and Watson v. Proctor & Gamble Defense Corporation, 188 Tenn. 494, 221 S.W.2d 528, in support of his contention that the statute of limitations was tolled because the doctors of defendant allegedly concealed from him the nature of his injury.

The factual allegations contained in the pleadings in each of those cases (each case being decided on bill and demurrer) present factual situations which may be distinguished from the facts in the instant case. As previously indicated, the Ogle case holds that the employee's cause of action accrues on the date of the injury and not on the date of the accident. Actual fraud was charged and of course on demurrer was admitted in the Burchman case. The Court has expressly found in the present case that the defendants were not guilty of any fraudulent conduct in their dealings with plaintiff.

Another distinguishing feature in the Burchman case is that in that case the injury was not apparent or disabling until a considerable length of time after the accident.

Actual fraud was charged in the Watson case. Watson did not know that the injury to his eye was due to trauma until approximately two years after the accident and the doctors of the employer told him that the trouble in his eye was hereditary cataract and was not caused by trauma. Those facts are sufficient to distinguish the Watson case from the present case.

■ The Court is of the opinion that the principles announced in the case of Netherland v. Mead Corporation, 170 Tenn. 520, 98 S.W.2d 76, are controlling here. See, also, Pruett v. Wichita Falls & S. R. Co., Tex.Civ.App.1937, 109 S.W. 2d 538; Wright v. Crown Cork & Seal Co., 1950, 195 Md. 600, 74 A.2d 22; Mottet v. Libbey-Owens Ford Glass Co., La. App.1950, 49 So.2d 38; McLaughlin v. Western Union Telegraph Company, 5 Cir., 17 F.2d 574.

Learned counsel for plaintiff calls attention to the fact in his brief that plaintiff filed his suit in the Chancery Court in Kingsport on March 30, 1954, and that the case stood for trial in that Court on April 19, 1954, but that, "The defendants, for some reason, known only to themselves, flouted the provisions of the Workmen's Compensation Laws, which provide for an early and speedy trial in Workmen's Compensation suits, and totally disregarded the spirit and purpose of the law and declared intent of the law, and removed the cause into the U. S. District Court at Greeneville, Tennessee, requiring and compelling the petitioner to wait until October, 1954, to get a hearing of the cause."

■ This Court is in full accord with the view that the Legislature of Tennessee intended that workmen's compensation cases be tried by the State courts in the County where the accident occurred, as soon as possible after the accident, and at the place closest to the residence of the witnesses. But under existing law, if the amount involved exceeds $3,000 and the diversity of citizenship requirement exists, either party may have his case tried in the Federal Court. Whether this is or is not as it should be is a matter to be addressed not to the Court, but to Congress.

Let an order be presented dismissing plaintiff's suit.